Beth A. Wilkinson (pro hac vice)
Rakesh N. Kilaru (pro hac vice)
**WILKINSON STEKLOFF LLP**
2001 M St NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4046
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com

*Attorneys for Defendant Paramount Skydance Corporation*

Daniel M. Petrocelli (SBN 97802)
**O'MELVENY & MYERS LLP**
999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779
dpetrocelli@omm.com

Peter C. Herrick *(pro hac vice)*
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, NY 10019-6022
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
pherrick@omm.com

*Attorneys for Defendant Warner Bros. Discovery, Inc.*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

WRITERS GUILD OF AMERICA, WEST, INC., and WRITERS GUILD OF AMERICA EAST, INC.,

*Plaintiffs*,

v.

PARAMOUNT SKYDANCE CORPORATION, and WARNER BROS. DISCOVERY, INC.,

*Defendants*.

Case No. 4:26-cv-7212-AMO

**DEFENDANTS PARAMOUNT SKYDANCE CORPORATION'S AND WARNER BROS. DISCOVERY, INC.'S ANSWER AND DEFENSES TO PLAINTIFFS' COMPLAINT**

**DEFENDANTS' ANSWER TO COMPLAINT AND DEFENSES**

Defendants Paramount Skydance Corporation ("Paramount") and Warner Bros. Discovery, Inc. ("Warner Bros.") (Paramount and Warner Bros. collectively, "Defendants") respond as follows to the allegations set forth in Writers Guild of America, West, Inc.'s ("WGAW") and Writers Guild of America, East, Inc.'s ("WGAE") (collectively, "Writers Guild" or "WGA" or "Plaintiffs") July 14, 2026 Complaint (the "Complaint"). Any allegation not specifically and expressly admitted is denied.

**PRELIMINARY STATEMENT**

This case represents a misguided attempt by the Writers Guild to manufacture an antitrust claim to stop a procompetitive merger. Paramount and Warner Bros. joining forces (the "Merger") will revitalize the entertainment industry by stoking competition that benefits writers, consumers, theaters, and other creators. The rationale for the Merger is to produce more and better content to better compete in a dynamic landscape, which will in turn generate *greater* demand for creative talent—especially writers.

The Writers Guild's Complaint rests on a fundamental mischaracterization of competition and gerrymandered, made-for-litigation markets that are divorced from the realities of entertainment production. Far from being concentrated under the control of a small handful of entities, competition for scripts and creative talent is fierce. A rapidly-expanding group of studios competes to attract scripts and writers, including not only studios like Disney, Sony, Warner Bros., Paramount, Lionsgate, NBCUniversal, Fox, A24, Blumhouse, and NEON, but also deep-pocketed tech giants like Netflix, Amazon MGM, and Apple. These competitors maintain their own development pipelines and creative relationships, frequently outbid so-called legacy studios for coveted scripts, compete directly against legacy studios for "overall deals," and produce a large number of projects for which they retain writing services. The merging parties will thus have no ability or incentive to suppress compensation for writers or reduce demand for new material.

In an effort to suggest otherwise, Plaintiffs gerrymander three U.S. markets that they claim the Merged entity will dominate: (1) a purported market limited to WGA-covered anticipated top grossing films; (2) a purported market limited to episodic television shows; and (3) a purported

market for writers under "overall deals." But the facts demonstrate that these market slices make no economic sense. In reality, Paramount and Warner Bros. combined represent a relatively small share of the buyers for writing services for movies and television shows, even looking within Plaintiffs' artificial markets, the validity of which Defendants do not concede. The chart below, for example, shows the merging parties' small shares in Plaintiffs' alleged film market.[1]

**Figure 1**

**2022-2025 Studio Shares Based on Credits**

*Limited to Films with Wide Theatrical Releases*




Moreover, this share is shrinking in the face of rapidly expanding industry dynamics, including the significance of Netflix and other streaming giants, Amazon MGM's expanded slate of feature films, and the growth of newer studios like A24. Contrary to Plaintiffs' suggestion, there are at least ten studios that can develop and produce theatrical films with production budgets over Plaintiffs' arbitrary $100 million threshold. Writers frequently switch among these studios to develop films, and they frequently switch between projects above and below Plaintiffs' arbitrary

---

[1] The combined share is well below the 30% rebuttable presumption threshold in *United States v. Philadelphia National Ban*k, 374 U.S. 321 (1963). Moreover, modern antitrust jurisprudence focuses on analyzing the economic realities of the market, rather than solely market shares, especially in dynamic and changing industries like the entertainment industry.

cutoffs. Moreover, Plaintiffs' alleged theatrical-only market ignores actual script-bidding dynamics, where top writing talent routinely chooses streaming studios to make their films, including because of the broad exposure such projects receive and streamers' ability to pay top dollar. Writers frequently write highly-sought-after scripts for film and television, and do so not only for vertically integrated studios, but also for well-funded streaming services. Plaintiffs' alleged markets simply ignore these economic realities.

Simply put, the Merger will expand opportunities for writers, not diminish them. Indeed, following the merger of Paramount and Skydance, the combined company nearly doubled its theatrical film output, and Paramount has committed to releasing at least 30 feature films in theaters annually following the merger with Warner Bros. That is for good reason: theatrical releases are essential to creating demand for films on the parties' streaming services, which will in turn allow them to better compete against larger rivals like Netflix, Amazon, and Disney. More films and more content mean more writing jobs. The same is true for television shows. Compensation and working conditions for writers will also be protected by collective bargaining agreements with the WGA, which holds substantial bargaining power and will continue to do so after the Merger. Plaintiffs' claims of labor market harm from the Merger are wholly unsupported by the facts.

Plaintiffs' allegations that Paramount's debt commitments to finance the Merger will result in Paramount cutting back on content spending are misguided. As just explained, the combined firm's strategy is to *expand* content output to more effectively compete at scale with the streaming giants, like Netflix. This approach requires more productions, not fewer—especially for theatrical films, which are crucial to driving demand for streaming services. The importance of creating more and better content will incentivize the combined firm to engage larger and more diverse teams of writers, injecting more—not less—competition into the markets for writing services.

Granting the relief Plaintiffs seek would harm writers, rather than help them, and would impose significant economic costs on Defendants and consumers. Those outcomes are the opposite of what the antitrust laws are designed to protect. Specific responses to the Plaintiffs' allegations follow below.

**RESPONSES TO PLAINTIFFS' ALLEGATIONS**

All allegations not expressly admitted herein are denied. Defendants do not interpret the headings and subheadings throughout the Complaint as well-pleaded allegations to which any response is required. To the extent a response is required, Defendants deny all allegations in the headings and subheadings of the Complaint. Use of certain terms or phrases defined in the Complaint is not an acknowledgment or admission of any characterization Plaintiffs may ascribe to the terms. Unless otherwise defined, capitalized terms shall refer to the capitalized terms defined in the Complaint, but any such use is not an acknowledgment or admission of any characterization Plaintiffs may ascribe to the capitalized terms.

Defendants do not concede the truthfulness of third-party sources quoted or referenced in the Complaint. To the extent a response is required, Defendants deny all allegations of the third-party sources quoted in or referenced in the Complaint. Unless expressly acknowledged below, Defendants further do not concede the accuracy or completeness of alleged quotations attributed to or from Defendants' employees or documents, which are provided without the appropriate context or proffered in part to assert truth in a manner that may not be consistent with the declarant's intent. Defendants reserve the right to amend and/or supplement this Answer at a later stage of the proceedings. Each paragraph below corresponds to the same-numbered paragraph in the Complaint.

The preamble to the Complaint characterizes this action and does not require a response. To the extent that a response is deemed necessary, Defendants admit that Plaintiffs purport to bring a civil action to enjoin Paramount from merging with Warner Bros. Defendants deny that Plaintiffs have any legitimate claim against Defendants, that Plaintiffs have any likelihood of success on the merits, and that Plaintiffs are entitled to any relief.

Defendants further answer the numbered paragraphs of the Complaint as follows:

## I. INTRODUCTION

Response to Paragraph 1:

Paragraph 1 characterizes this action and asserts legal conclusions and argument to which no response is required. Defendants deny that they have violated any federal antitrust law, deny

that the proposed Merger threatens the economic or creative health of the American entertainment industry, and deny that the Merger must or should be blocked. Defendants admit that Paramount and Warner Bros. are vertically-integrated film and television studios. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiffs constitute "film and television writers" as alleged, but do not dispute that the WGA represents certain writers. Defendants deny the remaining allegations in Paragraph 1, including that the merged firm will be the largest buyer of original film and television programming in the United States, that the Merger will eliminate "vigorous competition," or that it will result in suppressed compensation, worse deal terms, or reduced programming volume and diversity.

Response to Paragraph 2:

Paragraph 2 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 2.

Response to Paragraph 3:

Paragraph 3 contains Plaintiffs' definition of the so-called "Major Film Studios," to which no response is required. To the extent that a response is required, Defendants admit that Disney, NBCUniversal, Sony, Paramount, and Warner Bros. are film studios that produce and distribute theatrical films. Defendants deny, however, that any properly defined relevant market consists only of these five studios and deny the allegation that they are the only significant competitors. Defendants deny the remaining allegations in Paragraph 3.

Response to Paragraph 4:

Defendants admit that Defendants maintain in-house or affiliated post-production facilities and distribution capabilities. Defendants deny that the capabilities described in Paragraph 4 "cannot be replicated" by other market participants. Defendants deny the remaining allegations in Paragraph 4.

Response to Paragraph 5:

Defendants admit that Paramount and Warner Bros. are vertically integrated film studios with theatrical distribution and streaming capabilities, and that Disney and NBCUniversal also have theatrical distribution and streaming capabilities. Defendants admit that Sony does not own

a full-scale proprietary streaming platform, but state that Sony operates the Crunchyroll streaming service and maintains theatrical distribution capabilities. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Sony's Crunchyroll platform "exclusively" distributes anime projects "primarily produced outside the U.S." or that Sony "extensively licenses its programming to third-party platforms and networks." Defendants deny that Plaintiffs' definition of "Major Film Studios" accurately reflects the set of competitors in any properly defined relevant market, as set forth in Defendants' response to Paragraph 3, supra. Defendants deny the remaining allegations in Paragraph 5, including that the four named studios are the only entities capable of "deliver[ing] films to large audiences through major internal distribution channels."

Response to Paragraph 6:

Defendants deny the allegations in Paragraph 6 and specifically deny that the Merger will "reduce competition for screenwriters" or "put downward pressure on the economic and creative opportunities available to film writers." Defendants deny that Plaintiffs' definition of "Major Film Studios" accurately reflects the set of competitors in any properly defined relevant market, as set forth in Defendants' response to Paragraph 3, supra. Defendants also deny that the services of smaller production companies or independent studios are "not interchangeable" with those of the entities Plaintiffs label "Major Film Studios."

Response to Paragraph 7:

Defendants admit that Disney, NBCUniversal, Paramount, Warner Bros., Netflix, Apple, and Amazon MGM are companies that produce television programming and compete for writing talent. Defendants deny that these seven companies constitute the only relevant competitors in any properly defined market for television writing services. Defendants deny the remaining allegations in Paragraph 7.

Response to Paragraph 8:

Defendants admit that Paramount and Warner Bros. both distribute films to theaters, produce and sell television programming to broadcasting as well as streaming platforms, and license programming for reuse, including on their affiliated streaming platforms, cable networks,

and pay television services. Defendants deny that any purported head-to-head competition between Paramount and Warner Bros. is uniquely significant in the context of the broader competitive landscape. Defendants deny the allegation that competition between Defendants, as opposed to competition among all industry participants, has had the effects described in Paragraph 8. Defendants deny the remaining allegations in Paragraph 8, including the allegation that the Merger will harm writers or reduce competition for consumers.

Response to Paragraph 9:

Paragraph 9 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny that any thresholds cited are determinative of legality or that the Merger satisfies any purported presumption. Defendants deny that the Merger threatens to substantially lessen competition in any properly defined relevant market. Defendants deny that the combined entity will command a market share "in excess of 30% across several relevant markets for film and television writers' services." Defendants further state that Plaintiffs' market definitions are artificially narrow and gerrymandered to inflate concentration figures. Defendants deny the remaining allegations in Paragraph 9.

Response to Paragraph 10:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10 regarding the Disney-Fox acquisition and its effects, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 10.

Response to Paragraph 11:

Denied.

Response to Paragraph 12:

Defendants deny the allegations in Paragraph 12 and specifically deny that the Merger will result in less competition, "silence underrepresented voices," or lower incentives to invest in unconventional, original, or underrepresented stories.

Response to Paragraph 13:

Defendants admit that vertically integrated studios may distribute programming they produce on affiliated platforms. Defendants deny that vertical integration has the anticompetitive

effects alleged in Paragraph 13. Defendants further state that Paramount and Warner Bros. both license significant amounts of programming to third-party distributors and acquire content from third-party studios. Defendants deny that the Merger will create a "walled garden" effect or foreclose writers from meaningful distribution opportunities. Defendants deny the remaining allegations in Paragraph 13.

Response to Paragraph 14:

Paragraph 14 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants admit that the proposed merger between Penguin Random House and Simon & Schuster was blocked by a federal district court. Defendants deny that the logic in the court's decision in the Penguin-Simon & Schuster case applies to this Merger. Defendants further state that the book publishing market differs materially from any properly defined markets for film and television writing services, including with respect to market structure, competitive dynamics, barriers to entry and expansion, and the nature of compensation and deal terms. Defendants deny the remaining allegations in Paragraph 14.

Response to Paragraph 15:

Denied.

Response to Paragraph 16:

Denied.

Response to Paragraph 17:

Paragraph 17 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 17.

Response to Paragraph 18:

Paragraph 18 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 18.

## II. JURISDICTION AND VENUE

Response to Paragraph 19:

Admitted.

Response to Paragraph 20:

Admitted.

Response to Paragraph 21:

Admitted.

## III. THE PARTIES

Response to Paragraph 22:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22 regarding the internal organization, membership numbers, and corporate status of the Writers Guild of America, West, Inc., and deny those allegations on that basis. Defendants admit that the WGAW represents certain professional writers who write literary material for film and television productions. Defendants admit that certain of WGAW's members have been employed by subsidiary companies of Paramount and Warner Bros. Defendants deny the allegation that WGAW's membership includes writers "in each relevant market" as that phrase assumes the validity of Plaintiffs' proposed market definitions, which Defendants dispute.

Response to Paragraph 23:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23 regarding the internal organization, membership numbers, and corporate status of the Writers Guild of America East, Inc., and deny those allegations on that basis. Defendants admit that the WGAE represents certain professional writers who write literary material for film and television productions. Defendants admit that certain of WGAE's members have been employed by subsidiary companies of Paramount and Warner Bros. Defendants deny the allegation that WGAE's membership includes writers "in each relevant market" as that phrase assumes the validity of Plaintiffs' proposed market definitions, which Defendants dispute.

Response to Paragraph 24:

Admitted.

Response to Paragraph 25:

Admitted.

## IV. BACKGROUND

### A. Film Production and Distribution

Response to Paragraph 26:

Admitted.

Response to Paragraph 27:

Defendants admit that film production involves processes such as greenlight decisions, principal photography, and post-production. Defendants deny the remaining allegations in Paragraph 27, including the allegation that greenlight decisions are made by only "a small number of executives" in a manner that suggests limited competition. Defendants further state that numerous studios and production companies, including Netflix, Amazon MGM, Apple, Lionsgate, A24, NEON, and others, have the financial resources and infrastructure to greenlight and produce films.

Response to Paragraph 28:

Defendants admit that distribution is the process by which films reach audiences and that theatrical releases involve coordination with exhibitors and marketing resources. Defendants deny that Plaintiffs' definition of "Major Film Studios" accurately reflects the set of competitors in any properly defined relevant market, as set forth in Defendants' response to Paragraph 3, supra. Defendants deny the allegation that "only the Major Film Studios" can "consistently execute" wide theatrical releases. Defendants deny the remaining allegations in Paragraph 28, including the implication that anticipated top grossing films constitute a distinct relevant market.

Response to Paragraph 29:

Defendants admit that some films open in limited exhibition and may expand based on audience response. Defendants deny that the distinction between wide releases and limited releases supports Plaintiffs' proposed market definitions. Defendants further state that studios such as A24 and NEON have demonstrated the ability to achieve significant box office success and wide distribution for their films. Defendants deny the remaining allegations in Paragraph 29.

<u>Response to Paragraph 30:</u>

Defendants admit that some films are distributed directly through streaming services, sometimes with limited or no theatrical release. Defendants deny the remaining allegations in Paragraph 30.

**B. Television Production and Distribution**

<u>Response to Paragraph 31:</u>

Defendants admit that television writers are often involved across the lifecycle of a series, and that studios make decisions regarding production and staffing. Defendants deny the remaining allegations in Paragraph 31.

<u>Response to Paragraph 32:</u>

Defendants admit that Disney, NBCUniversal, Paramount, and Warner Bros. own or control broadcast networks, cable channels, or streaming platforms, and that Amazon, Netflix, and Apple operate streaming platforms. Defendants deny the remaining allegations in Paragraph 32.

<u>Response to Paragraph 33:</u>

Denied.

<u>Response to Paragraph 34:</u>

Defendants admit that Plaintiffs purport to quote from an earnings call transcript, which speaks for itself. Defendants deny the remaining allegations in Paragraph 34.

<u>Response to Paragraph 35:</u>

Defendants admit that Plaintiffs purport to quote from an earnings call transcript, which speaks for itself. Defendants deny the remaining allegations in Paragraph 35.

<u>Response to Paragraph 36:</u>

Denied.

<u>Response to Paragraph 37:</u>

Denied.

<u>Response to Paragraph 38:</u>

Paragraph 38 characterizes this action and asserts legal conclusions and argument to which no response is required. Defendants admit that under the MBA, writers are entitled to residual

compensation when projects are reused, and that sometimes residuals are calculated as a percentage of revenue. Defendants deny the remaining allegations in Paragraph 38.

<u>Response to Paragraph 39:</u>

Paramount admits that in April 2021, WGAW and CBS entered into a settlement agreement to resolve WGAW's allegations regarding residual payments. Warner Bros. lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39 regarding a claim by the WGAW against CBS, and denies those allegations on that basis. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39 regarding WGA's alleged settlement with Netflix, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 39.

<u>Response to Paragraph 40:</u>

Paragraph 40 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 40.

**C. Writers' Employment and Compensation**

<u>Response to Paragraph 41:</u>

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41, and deny them on that basis.

<u>Response to Paragraph 42:</u>

Denied.

<u>Response to Paragraph 43:</u>

Defendants admit that the MBA establishes minimum compensation and residual payments for WGA members, and that members may negotiate for additional compensation. Defendants admit that the MBA establishes different minimum compensation structures for television scripts and film scripts. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 43, and deny them on that basis.

1. Screenwriter's Compensation

Response to Paragraph 44:

Defendants admit that screenwriters can be compensated through script fees. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 44, and deny them on that basis.

Response to Paragraph 45:

Admitted.

Response to Paragraph 46:

Defendants admit that the MBA establishes minimum compensation for screenplays at various stages of development and that minimum rates for screenplays may vary. Defendants deny the remaining allegations in Paragraph 46.

Response to Paragraph 47:

Admitted.

2. Television Writer's Compensation

Response to Paragraph 48:

Defendants admit that the MBA establishes minimum rates for television script fees and weekly or per episode fees. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 48, and deny them on that basis.

Response to Paragraph 49:

Defendants admit that a pilot is the first episode of a television series and that pilot script fees may be higher than MBA minimums. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 49, and deny them on that basis.

Response to Paragraph 50:

Defendants admit that studios may decide to greenlight a show after a pilot script is written and that the MBA sets minimum staffing levels for writers' rooms. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 50, and deny them on that basis.

Response to Paragraph 51:

Defendants admit that the MBA sets minimum weekly compensation for WGA members employed to write television scripts that varies based on job title/classification, and that per episode fees must comply with MBA weekly minimums for WGA members. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 51, and deny them on that basis.

Response to Paragraph 52:

Defendants admit that titles for television script writers may include Staff Writer, Story Editor, Executive Story Editor, Co-Producer, Producer, Supervising Producer, Co-Executive Producer, and Executive Producer. Defendants deny the remaining allegations in Paragraph 52.

Response to Paragraph 53:

Defendants admit that WGA members may negotiate rates above MBA minimums. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 53, and deny them on that basis.

Response to Paragraph 54:

Defendants admit that television writing contracts may provide for compensation on a per week or per episode basis. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 54, and deny them on that basis.

Response to Paragraph 55:

Defendants admit that writing contracts may contain provisions that set the length of employment. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 55, and deny them on that basis.

Response to Paragraph 56:

Defendants admit that some writers may enter overall deals with studios for exclusive access to the writer's development and work for a set period. Defendants deny the remaining allegations in Paragraph 56.

Response to Paragraph 57:

Defendants admit that overall deal terms may include the elements described in Paragraph 57. Defendants deny the remaining allegations in Paragraph 57.

Response to Paragraph 58:

Defendants admit that Paragraph 58 purports to quote Michael Schur. Defendants deny the remaining allegations in Paragraph 58.

Response to Paragraph 59:

Denied.

Response to Paragraph 60:

Denied.

3. Residuals

Response to Paragraph 61:

Admitted.

Response to Paragraph 62:

Defendants admit that credited MBA members may receive a share of license fee revenues according to MBA formulas. Defendants admit that the MBA requires commonly owned entities to set imputed license fees, and that the MBA provides that WGA can challenge the appropriateness of imputed license fees. Defendants deny the remaining allegations in Paragraph 62.

**D. Vertical Integration in Film and Television Studios**

Response to Paragraph 63:

Denied.

1. Film Studios

Response to Paragraph 64:

Defendants admit that vertically integrated studios may perform the functions described in Paragraph 64. Defendants deny that a vertically integrated studio can "use its large slate to cross-leverage titles against one another, conditioning access to an anticipated top grossing film on better

terms for another title." Defendants deny that these capabilities "cannot [be] replicate[d]" by other production companies. Defendants deny the remaining allegations in Paragraph 64.

<u>Response to Paragraph 65:</u>

Defendants admit that Sony does not operate a proprietary full-scale streaming service but maintains theatrical distribution capabilities and licenses programming to third-party platforms. Defendants deny the remaining allegations in Paragraph 65.

<u>Response to Paragraph 66:</u>

Defendants admit that Netflix, Amazon, and Apple operate streaming platforms. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 66, and deny them on that basis.

<u>Response to Paragraph 67:</u>

Defendants admit that Amazon has released some films directly to its streaming service and others through theatrical release. Defendants admit that Amazon acquired MGM in 2022. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 67, and deny them on that basis.

<u>Response to Paragraph 68:</u>

Defendants deny that "Apple does not compete at scale with the Major Film Studios." Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 68, and deny them on that basis.

<u>Response to Paragraph 69:</u>

Defendants admit that Paragraph 69 purports to quote Netflix's co-CEO. Defendants deny the remaining allegations in Paragraph 69.

<u>Response to Paragraph 70:</u>

Defendants admit that Paragraph 70 purports to quote David Koepp. Defendants further admit that Warner Bros. acquired the distributed rights and released Crazy Rich Asians theatrically. Defendants deny the remaining allegations in Paragraph 70.

<u>Response to Paragraph 71:</u>

Defendants admit that a theatrical release structure may preserve the possibility of sequential windowing, where the writer may earn residuals. Defendants admit that residuals for theatrical releases may take the form of a percentage of the project's revenue generated by reuse in secondary markets and that writers may negotiate for profit or revenue participation. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 71, and deny them on that basis.

Response to Paragraph 72:

Defendants admit that Warner Bros. purchased the rights to *Siren Head*. Defendants deny the remaining allegations in Paragraph 72.

Response to Paragraph 73:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 73, and deny them on that basis.

Response to Paragraph 74:

Defendants admit that Paragraph 74 purports to quote the chairman of Netflix. Defendants deny the remaining allegations in Paragraph 74.

Response to Paragraph 75:

Denied.

Response to Paragraph 76:

Defendants lack knowledge or information sufficient to form a belief about the truth of the the second sentence of Paragraph 76, and deny it on that basis. Defendants deny the remaining allegations in Paragraph 76.

Response to Paragraph 77:

Denied.

2. Television Studios

Response to Paragraph 78:

Defendants admit that Netflix, Apple, Amazon, Disney, NBCUniversal, Paramount, and Warner Bros. and multiple other companies compete for scripts. Defendants deny the remaining allegations in Paragraph 78.

Response to Paragraph 79:

Defendants admit that Sony does not own broadcast networks or major streaming platforms. Defendants deny the remaining allegations in Paragraph 79.

Response to Paragraph 80:

Defendants' earnings call transcripts speak for themselves. Defendants deny the remaining allegations in Paragraph 80.

Response to Paragraph 81:

Defendants admit that Netflix, Disney, Amazon, Apple, and NBCUniversal, among others, are competitors of Defendants. Defendants deny the remaining allegations in Paragraph 81.

Response to Paragraph 82:

Defendants admit that Paragraph 82 purports to quote from Paramount's Form DFAN14A, filed December 8, 2025. Defendants deny the remaining allegations in Paragraph 82.

Response to Paragraph 83:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 83 regarding Lionsgate's and A24's distribution infrastructure, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 83.

Response to Paragraph 84:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 84 regarding the accuracy or meaning of the graphic referenced therein, and deny those allegations on that basis.

**E. The Leading Studios Consolidate into the Major Film and Major Television Studios**

Response to Paragraph 85:

Denied.

Response to Paragraph 86:

Denied.

Response to Paragraph 87:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 87 regarding the accuracy or meaning of the graphics referenced therein, and deny those allegations on that basis.

Response to Paragraph 88:

Paragraph 88 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants admit that the FCC's "financial interest and syndication rules" (Fin-Syn Rules) were repealed in 1995. Defendants deny the remaining allegations in Paragraph 88.

Response to Paragraph 89:

Paragraph 89 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants admit that the Fin-Syn Rules were enacted in 1970 and applied to ABC, CBS, and NBC at that time. Defendants deny the remaining allegations in Paragraph 89.

Response to Paragraph 90:

Paragraph 90 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants admit that the Fin-Syn Rules required structural separation between studios that produced television series and networks that distributed them. Defendants deny the remaining allegations in Paragraph 90.

Response to Paragraph 91:

Paragraph 91 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants admit that the FCC repealed the Fin-Syn Rules in 1995. Defendants deny the remaining allegations in Paragraph 91.

Response to Paragraph 92:

Paragraph 92 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants admit that following the repeal of the Fin-Syn Rules,

studios were permitted to own networks that carried their programming and retain financial interests in the shows they aired. Defendants deny the remaining allegations in Paragraph 92.

Response to Paragraph 93:

Paragraph 93 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants admit that Paramount includes film studios, broadcast and cable networks, and streaming services and that Warner Bros. includes film studios, cable networks, and streaming services. Defendants deny the remaining allegations in Paragraph 93.

Response to Paragraph 94:

Denied.

Response to Paragraph 95:

Defendants admit that Disney acquired ABC, Pixar, Marvel Entertainment, Lucasfilm, and 21st Century Fox. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 95 regarding the accuracy of the stated valuations, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 95.

Response to Paragraph 96:

Denied.

Response to Paragraph 97:

Defendants admit that Paragraph 97 purports to quote David Koepp. Defendants deny the remaining allegations in Paragraph 97.

**F. The Proposed Paramount-Warner Bros. Merger**

Response to Paragraph 98:

Defendants admit that Paramount proposes to merge with Warner Bros. in a merger valued at approximately $110 billion including debt. Defendants deny the remaining allegations in Paragraph 98..

Response to Paragraph 99:

Defendants admit that the Merger would unite the film and television libraries and the production infrastructure of Paramount and Warner Bros. Defendants deny the remaining allegations in Paragraph 99.

Response to Paragraph 100:

Denied.

Response to Paragraph 101:

Defendants admit that Larry Ellison has provided a personal guarantee of $40.4 billion to backstop equity financing and that the transaction includes cash elements. Defendants deny the remaining allegations in Paragraph 101.

Response to Paragraph 102:

Paramount admits that the Merger also includes bridge loans and equity contributions, and that the indirect foreign ownership of the merged entity is expected to be 49.5%, with three sovereign wealth funds expected to hold indirect equity interests in 38.5% in the aggregate; Warner Bros. lacks knowledge or information sufficient to form a belief about the truth of this allegation in Paragraph 102 and denies this allegations on that basis. Defendants deny the remaining allegations in Paragraph 102.

Response to Paragraph 103:

Denied.

Response to Paragraph 104:

Denied.

Response to Paragraph 105:

Denied.

Response to Paragraph 106:

Defendants admit that the agreement includes a $7 billion reverse termination fee and a ticking fee of approximately $0.25 per share per quarter if the transaction is not closed by September 30, 2026. Defendants deny the remaining allegations in Paragraph 106.

## V. RELEVANT MARKETS

Response to Paragraph 107:

Paragraph 107 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 107.

**A. Writing Services for WGA-Covered Anticipated Top Grossing Films Is a Relevant Market**

Response to Paragraph 108:

Denied.

Response to Paragraph 109:

Denied.

Response to Paragraph 110:

Denied.

Response to Paragraph 111:

Paragraph 111 asserts legal conclusions and argument that do not require a response. To the extent a response is required, Defendants deny the allegations in Paragraph 111.

Response to Paragraph 112:

Denied.

Response to Paragraph 113:

Denied.

Response to Paragraph 114:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 114 regarding the reporting practices of trade publications, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 114.

**B. Writing Services for Episodic Television Shows Is a Relevant Market**

Response to Paragraph 115:

Paragraph 115 asserts legal conclusions and argument that do not require a response. To the extent a response is required, Defendants deny the allegations in Paragraph 115.

Response to Paragraph 116:

Denied.

Response to Paragraph 117:

Paragraph 117 asserts legal conclusions and argument that do not require a response. To the extent a response is required, Defendants deny the allegations in Paragraph 117.

Response to Paragraph 118:

Denied.

Response to Paragraph 119:

Denied.

Response to Paragraph 120:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 120 regarding the reporting practices of trade publications, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 120.

Response to Paragraph 121:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 121 regarding the internal structure of talent agencies, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 121.

Response to Paragraph 122:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 122 regarding the internal structure of talent agencies, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 122.

Response to Paragraph 123:

Denied.

**C. Writing Services of Writers Under Overall Deals Is a Relevant Market**

Response to Paragraph 124:

Paragraph 124 asserts legal conclusions and argument that do not require a response. To the extent a response is required, Defendants deny the allegations in Paragraph 124.

Response to Paragraph 125:

Paragraph 125 asserts legal conclusions and argument that do not require a response. To the extent a response is required, Defendants deny the allegations in Paragraph 125.

Response to Paragraph 126:

Denied.

Response to Paragraph 127:

Denied.

Response to Paragraph 128:

Denied.

Response to Paragraph 129:

Denied.

Response to Paragraph 130:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 130 regarding the reporting practices of trade publications, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 130.

Response to Paragraph 131:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 131 regarding the internal structures of talent agencies, and deny those allegations on that basis.

Response to Paragraph 132:

Denied.

**D. The Relevant Geographic Market Is the United States**

Response to Paragraph 133:

Denied.

Response to Paragraph 134:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 134, and deny them on that basis.

Response to Paragraph 135:

Denied.

Response to Paragraph 136:

Paragraph 136 asserts legal conclusions and argument that do not require a response. To the extent a response is required, Defendants deny the allegations in Paragraph 136.

**E.** Barriers to Entry

Response to Paragraph 137:

Denied.

Response to Paragraph 138:

Denied.

Response to Paragraph 139:

Denied.

Response to Paragraph 140:

Denied.

Response to Paragraph 141:

Denied.

Response to Paragraph 142:

Denied.

Response to Paragraph 143:

Denied.

Response to Paragraph 144:

Defendants admit that streaming platforms require a robust film and series library to attract and retain platform subscribers, that a strong subscriber base is important for streaming platforms, and that streaming platforms require capital to develop and maintain infrastructure and to develop and maintain attractive programming for subscribers. Defendants deny the remaining allegations in Paragraph 144.

Response to Paragraph 145:

Denied.

## VI. ANTICOMPETITIVE EFFECTS

Response to Paragraph 146:

Denied.

Response to Paragraph 147:

Defendants admit that Paragraph 147 purports to describe Defendants' Form 8-K announcement regarding the Merger. Defendants deny the remaining allegations in Paragraph 147.

Response to Paragraph 148:

Defendants admit that Paragraph 148 purports to quote Damon Lindelof. Defendants deny the remaining allegations in Paragraph 148.

Response to Paragraph 149:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 149 regarding the specific release numbers attributed to Disney and Fox, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 149.

Response to Paragraph 150:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 150 regarding the specific release numbers attributed to Disney and Fox, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 150.

Response to Paragraph 151:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 151 regarding Disney and Fox 2000, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 151.

Response to Paragraph 152:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 152 regarding Disney and Blue Sky Studios, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 152.

Response to Paragraph 153:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 153, and deny them on that basis.

Response to Paragraph 154:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 154, and deny them on that basis.

Response to Paragraph 155:

Defendants admit that Paramount and Warner Bros. each released theatrical films in 2025. Defendants deny the remaining allegations in Paragraph 155.

Response to Paragraph 156:

Defendants admit that Paragraph 156 purports to quote Eric Handler. Defendants deny the remaining allegations in Paragraph 156.

Response to Paragraph 157:

Denied.

Response to Paragraph 158:

Denied.

Response to Paragraph 159:

Denied.

Response to Paragraph 160:

Defendants admit that Paragraph 160 purports to quote Wall Street Firm MoffettNathanson. Defendants deny the remaining allegations in Paragraph 160.

Response to Paragraph 161:

Defendants admit that Paragraph 161 purports to quote Mark Ruffalo. Defendants deny the remaining allegations in Paragraph 161.

Response to Paragraph 162:

Defendants admit that Paragraph 162 purports to quote from an open letter. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 162, and deny them on that basis.

Response to Paragraph 163:

Denied.

**A. The Transaction Will Substantially Lessen Competition in Each Relevant Market**

Response to Paragraph 164:

Paragraph 164 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 164.

Response to Paragraph 165:

Paragraph 165 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 165, except admit that some agencies and courts have considered HHI figures in merger analysis.

Response to Paragraph 166:

Paragraph 166 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 166, except admit that HHI is calculated by summing the squares of individual firm's market shares.

Response to Paragraph 167:

Paragraph 167 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 167.

Response to Paragraph 168:

Paragraph 168 asserts legal conclusions and argument and purports to characterize the Merger Guidelines, which is a written document that speaks for itself. To the extent a response is required, Defendants deny the allegations in Paragraph 168.

Response to Paragraph 169:

Paragraph 169 asserts legal conclusions and argument and purports to characterize the Merger Guidelines, which is a written document that speaks for themselves. To the extent a response is required, Defendants deny the allegations in Paragraph 169.

Response to Paragraph 170:

Paragraph 170 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 170.

Response to Paragraph 171:

Paragraph 171 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 171.

1. All Screenwriters of WGA-Covered Anticipated Top Grossing Films

Response to Paragraph 172:

Paragraph 172 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 172.

2. All Episodic Television Writers on WGA-Covered Projects

Response to Paragraph 173:

Paragraph 173 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 173.

3. Overall Deal Writers

Response to Paragraph 183:

Paragraph 183 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 183.

**B. The Transaction Will Lead to Lower Wages for Writers**

Response to Paragraph 184:

Denied.

Response to Paragraph 185:

Denied.

Response to Paragraph 186:

Denied.

Response to Paragraph 187:

Denied.

Response to Paragraph 188:

Denied.

Response to Paragraph 189:

Denied.

Response to Paragraph 190:

Defendants admit that Paramount and Warner Bros. may compete in certain situations for creative workers. Defendants otherwise deny the allegations in Paragraph 190.

Response to Paragraph 191:

Denied.

Response to Paragraph 192:

Defendants admit that Paragraph 192 purports to quote Michael Schur. Defendants deny the remaining allegations in Paragraph 192.

Response to Paragraph 193:

Defendants admit that Paragraph 193 purports to quote Shawn Ryan. Defendants deny the remaining allegations in Paragraph 193.

Response to Paragraph 194:

Defendants admit that Paragraph 194 purports to quote David Koepp. Defendants deny the remaining allegations in Paragraph 194.

Response to Paragraph 195:

Denied.

Response to Paragraph 196:

Denied.

Response to Paragraph 197:

Denied.

**C. The Merger Will Reduce the Quantity, Variety, and Quality of Creative Works**

Response to Paragraph 198:

Defendants admit that Paragraph 198 purports to quote Adam McKay. Defendants deny the remaining allegations in Paragraph 198.

Response to Paragraph 199:

Defendants admit that Paragraph 199 purports to quote an unidentified shareholder and former director of Warner Bros. Defendants deny the remaining allegations in Paragraph 199.

Response to Paragraph 200:

Denied.

Response to Paragraph 201:

Denied.

Response to Paragraph 202:

Denied.

**D. The Merger Will Increase the Likelihood of Coordination**

Response to Paragraph 203:

Denied.

Response to Paragraph 204:

Denied.

Response to Paragraph 205:

Paragraph 205 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 205.

Response to Paragraph 206:

Paragraph 206 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 206.

Response to Paragraph 207:

Paragraph 207 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 207.

Response to Paragraph 208:

The first sentence of Paragraph 208 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in the first sentence of Paragraph 208. Defendants deny the remaining allegations in Paragraph 208.

Response to Paragraph 209:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 209 regarding Netflix's compensation practices, and deny those allegations on that basis. Defendants deny the remaining allegations in Paragraph 209.

Response to Paragraph 210:

Denied.

Response to Paragraph 211:

Denied.

Response to Paragraph 212:

Denied.

**VII. NO PROCOMPETITIVE EFFECTS OR MERGER-SPECIFIC EFFICIENCIES JUSTIFY THE PROPOSED TRANSACTION**

Response to Paragraph 213:

Paragraph 213 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 213.

Response to Paragraph 214:

Paragraph 214 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 214.

Response to Paragraph 215:

Denied.

Response to Paragraph 216:

Paragraph 216 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 216.

Response to Paragraph 217:

Denied.

**VIII. ANTITRUST INJURY AND HARM TO PLAINTIFFS**

Response to Paragraph 218:

Denied.

Response to Paragraph 219:

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 219 regarding WGA's mission and furtherance of the interests of writers, and denies those allegation on that basis. Defendants deny the remaining allegations in Paragraph 210.

Response to Paragraph 220:

Denied.

Response to Paragraph 221:

Paragraph 221 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 221.

## IX. CLAIM FOR RELIEF

Response to Paragraph 222:

Paragraph 222 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 222.

Response to Paragraph 223:

Paragraph 223 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 223.

Response to Paragraph 224:

Paragraph 224 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 224.

Response to Paragraph 225:

Paragraph 225 asserts legal conclusions and argument that do not require a response. To the extent that a response is required, Defendants deny the allegations in Paragraph 225.

## X. PRAYER FOR RELIEF

Response to Paragraph 226:

No response is required to Plaintiffs' prayer for relief. To the extent that a response is required, Defendants deny that Plaintiffs are entitled to the relief requested or to any relief whatsoever.

Defendants deny the allegations in the Complaint, whether express or implied, that are not specifically addressed herein. Defendants request that they be awarded the costs incurred in defending this action, and that the Court grant such other relief as is just and proper.

## DEFENDANTS' DEFENSES

Defendants assert the following defenses with respect to the cause of action alleged in the Complaint, without assuming the burden of proof or persuasion where such burden rests on the Plaintiffs. Defendants have not knowingly or intentionally waived any applicable defenses, and they reserve the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action. Defendants reserve the right to amend, or seek to amend, their Answer, including their affirmative and other defenses.

1. Plaintiffs lack Article III standing.

2. Plaintiffs lack antitrust standing.

3. Plaintiffs lack associational standing to bring claims on behalf of their members.

4. Plaintiffs lack organizational standing.

5. Plaintiffs lack regulatory authority over the Merger, which is vested in the U.S. Department of Justice.

6. The Complaint fails to state a claim upon which relief can be granted.

7. The harm Plaintiffs allege is not a result of, and is independent of, the Merger and is not the type of harm that Section 7 is designed to prevent.

8. Plaintiffs' claim is too speculative to support any claim for which relief can be granted.

9. Plaintiffs have failed to allege any appropriate product or geographic market.

10. Plaintiffs' alleged market definitions do not reflect the commercial realities of the entertainment industry.

11. The Complaint fails to allege undue share in any plausibly-defined relevant market.

12. The Complaint fails to allege any plausible harm to competition.

13. The Complaint fails to allege any plausible harm to writers, consumers, or consumer welfare.

14. Plaintiffs have failed to establish that the Merger is likely to have any anticompetitive effect, whether unilateral or coordinated, or result in any anticompetitive harm in any properly defined relevant market.

15. Plaintiffs have failed to establish that the Merger is likely to have any anticompetitive effect in any relevant market because entry by new market participants and/or expansion by existing market participants will be timely, likely, and sufficient to undo any such effects.

16. The combination of Defendants' businesses is not likely to substantially lessen competition under the analytical framework set forth in the Clayton Act.

17. The proposed Merger is procompetitive, and \ will result in merger-specific efficiencies, cost synergies, and other procompetitive effects that will benefit writers and consumers. The benefits outweigh any alleged anticompetitive effects.

18. To the extent that Plaintiffs' claim relies on market share thresholds or presumptions, such as the 30% threshold articulated in *United States v. Philadelphia National Bank*, 374 U.S. 321 (1963), those thresholds and presumptions are not determinative of liability under Section 7 of the Clayton Act.

19. Plaintiffs cannot establish an entitlement to injunctive relief under Section 16 of the Clayton Act or Rule 65 of the Federal Rules of Civil Procedure because they have not met the prerequisites necessary under those provisions to obtain injunctive relief.

20. The injunctive relief that Plaintiffs seek is inconsistent with the public interest and the equities favor consummation of the Merger.

Dated: September 11, 2026

PARAMOUNT SKYDANCE CORPORATION

By: */s/ Beth A. Wilkinson*
Beth A. Wilkinson (pro hac vice)

Rakesh N. Kilaru (pro hac vice)
**WILKINSON STEKLOFF LLP**
2001 M St NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4046
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com

Marguerite Sullivan (pro hac vice)
Anna Rathbun (SBN 273787)
Christopher J. Brown (pro hac vice)
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
marguerite.sullivan@lw.com
anna.rathbun@lw.com
christopher.brown@lw.com

Jeffrey L. Kessler (pro hac vice)
**WINSTON TAYLOR LLP**
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jeffrey.kessler@winstontaylor.com

Jeanifer E. Parsigian (SBN 289001)
**WINSTON TAYLOR LLP**
101 California Street, 21st Floor
San Francisco, CA 94111-5891
Telephone: (415) 591-1469
Facsimile: (415) 591-1400
jeanifer.parsigian@winstontaylor.com

Conor A. Reidy (pro hac vice)
**WINSTON TAYLOR LLP**
300 N. LaSalle Drive
Chicago, IL 60654-3406
Telephone: (312) 558-7542
Facsimile: (312) 558-5700
conor.reidy@winstontaylor.com

*Attorneys for Defendant Paramount Skydance Corporation*

Dated: September 11, 2026

WARNER BROS. DISCOVERY, INC.

By: _/s/ Daniel M. Petrocelli_

Daniel M. Petrocelli (SBN 97802)
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779
dpetrocelli@omm.com

Peter C. Herrick (pro hac vice)
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, NY 10019-6022
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
pherrick@omm.com

Julia A. Schiller (pro hac vice)
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20006-4061
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
jschiller@omm.com

Derek Ludwin (pro hac vice)
Henry Liu (pro hac vice)
Ross A. Demain (pro hac vice)
**COVINGTON & BURLING LLP**
One CityCenter
850 10th Street NW
Washington, DC 20001
Telephone: (202) 662-6000
dludwin@cov.com
hliu@cov.com
rdemain@cov.com

Bernard A. Nigro Jr. (pro hac vice forthcoming)
Kathleen S. O'Neill (pro hac vice forthcoming)
**FRIED FRANK HARRIS SHRIVER & JACOBSON LLP**
801 17th Street NW
Washington, DC 20006
Telephone: (202) 639-7000
Facsimile: (202) 639-7003

Barry.Nigro@friedfrank.com
Kathy.Oneill@friedfrank.com

*Attorneys for Defendant Warner Bros. Discovery, Inc.*